**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE REYNOSO, | ) Case No. 10-00098 SC |
| | ) |
| Plaintiff, | ) ORDER GRANTING IN PART AND |
| | ) DENYING IN PART PLAINTIFF'S |
| v. | ) MOTION FOR ATTORNEY'S FEES |
| | ) AND COSTS |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

## I.  INTRODUCTION

This matter comes before the Court on a Motion for Attorney's Fees and Costs filed by Plaintiff Jose Reynoso ("Plaintiff" or "Reynoso") against Defendant United States of America ("the government" or "the United States").  ECF No. 36 ("Mot.").  The Motion is fully briefed.  ECF Nos. 52 ("Opp'n"), 54 ("Reply").  The Court heard oral arguments on April 15, 2011 and ordered the parties to take Plaintiff's deposition on the narrow issue of whether Plaintiff's net worth allows him to qualify as a "prevailing party" entitled to recover attorney's fees and costs under 26 U.S.C. § 7430.  The parties deposed Plaintiff on April 27, 2011, and Plaintiff subsequently filed a Statement of Net Worth with the Court.  ECF No. 72 ("Stmt. of Net Worth").  The government filed an Opposition to Statement of Net Worth.  ECF No. 75 ("Final

**United States District Court**
For the Northern District of California

1  Opp'n").  Plaintiff filed a reply.  ECF No. 76 ("Final Reply"). For

2  the following reasons, the Court GRANTS IN PART and DENIES IN PART

3  Plaintiff's Motion.

4

5  **II.   BACKGROUND**

6       Plaintiff is a chiropractor.  ECF No. 26 ("Dec. 21, 2010

7  Order").  He was charged with and pleaded guilty to three

8  misdemeanor counts of failing to file tax returns for 1999, 2000,

9  and 2001.  Id.  While Plaintiff did not file returns for these

10 years, he did make tax payments during these years.  He made tax

11 payments of $245,000 for 1999, $200,000 for 2000, and $200,000 for

12 2001.  Id.

13      As a result of the criminal proceeding, the Internal Revenue

14 Service ("IRS") seized approximately $1.2 million from Plaintiff to

15 be held toward his unascertained tax debts for the 1999, 2000, and

16 2001 tax years.  Mot. at 1.  On May 10, 2005, Plaintiff sent a

17 letter to the U.S. Attorney's Office requesting that $585,329 of

18 the seized funds be designated as a deposit, or "cash bond," to

19 offset Plaintiff's anticipated tax liability.  Mot. at 2; Reynoso

20 Decl.[1] ¶ 4 Ex. A ("May 10, 2005 Letter").  The government complied

21 with this request and released the remainder of the $1.2 million

22 back to Plaintiff.  Mot. at 2.

23      **A.     Plaintiff's Refund Requests**

24      In the May 10, 2005 Letter, Plaintiff requested that, in the

25 event that the $585,329 cash bond exceeded his tax liability, the

26 balance of the bond be refunded to him as soon as possible.  Id.

27 _____

28 [1] Plaintiff filed a declaration in support of the Motion.  ECF No.
   39.

2

United States District Court
For the Northern District of California

On December 13, 2005, the IRS credited $75,852 of the bond toward Plaintiff's 1999 taxes, $278,338 toward his 2000 taxes, and $51,913 toward his 2001 taxes.  Dec. 21, 2010 Order at 2.  In 2008, the IRS transferred the remaining $179,227 of the bond to an excess collection account.  Id.

In 2007 and 2008, Plaintiff filed his tax returns for 1999, 2000, and 2001, which revealed that he had overpaid for 1999 and 2000.  Id.  On December 5, 2008, Plaintiff sent a detailed letter to the IRS Appeals Office stating that, in light of the fact that he had now filed his delinquent tax returns and was due a refund on those returns, the entire amount of the cash bond should be returned to him immediately with accrued interest.  Reynoso Decl. ¶ 4 Ex. B ("Dec. 5, 2008 Letter").  On February 23, 2009, the IRS sent Plaintiff letters confirming that he had overpaid his 1999 taxes by $75,852 and his 2000 taxes by $357,118 and stating that refunds for these overpayments would be sent to him within approximately two weeks.  Reynoso Decl. ¶ 5 Exs. C and D ("IRS Refund Letters").  These letters did not mention the unapplied portion of the cash bond.  See id.

Two months later, on April 23, 2009, having not received the promised refund payments, Plaintiff sent another letter to the IRS, this time requesting refunds for the 1999 and 2000 overpayments and again requesting the return of the unapplied portion of the cash bond.  Ham Decl.[2] ¶ 6 Ex. B ("Apr. 23, 2009 Letter").  Despite making numerous phone calls to follow up on his request, Plaintiff received no response.  Ham Decl. ¶ 6.

---

[2] Paul Ham ("Ham"), attorney for Plaintiff, filed a declaration in support of the Motion.  ECF No. 37.

**United States District Court**
For the Northern District of California

1    **B.    This Lawsuit**

2        On January 8, 2010, Plaintiff filed suit seeking to recover

3    the unapplied portion of the cash bond and the refunds from his

4    1999 and 2000 overpayments -- an amount totaling $612,197.  ECF No.

5    1 ("Compl.") at 5.  On November 12, 2010, the parties filed cross-

6    motions for summary judgment.  ECF Nos. 11 ("Def.'s MSJ"), 13

7    ("Pl.'s MSJ").  In its MSJ, the United States conceded that

8    Plaintiff was entitled to recover the unapplied portion of the cash

9    bond and the entirety of his overpayment for 1999.  Def.'s MSJ at

10   1-2.  The government argued, however, that Plaintiff was only

11   entitled to recover $239,590 of the $357,117 overpayment from 2000

12   because recovery of the remaining $117,527 was barred by the

13   statute of limitations.  Id.  In its December 21, 2010 Order, the

14   Court granted summary judgment in favor of the United States and

15   awarded Plaintiff $494,670 plus interest.

16       Plaintiff filed the instant Motion on February 2, 2011,

17   seeking to recover attorney's fees and costs incurred through his

18   efforts to obtain the refund both prior to and during the instant

19   litigation.  Mot. at 1.  At the time this Motion was filed,

20   Plaintiff had not yet received payment of the award.  He received

21   payment on or about April 1, 2011.  ECF No. 63.

22

23   **III. LEGAL STANDARD**

24       Section 7430 of Title 26 of the United States Code states that

25   "in any administrative or court proceeding, which is brought by or

26   against the United States in connection with the determination,

27   collection, or refund of any tax, interest, or penalty . . . the

28   prevailing party may be awarded judgment or a settlement for" (1)

4

**United States District Court**
For the Northern District of California

1   reasonable administrative costs, and (2) reasonable litigation

2   costs.   26 U.S.C. § 7430(a); <u>see</u> <u>also</u> <u>United States v. Yochum</u>, 89

3   F.3d 661, 666 (9th Cir. 1996).

4        Under section 7430, a litigant is only a "prevailing party"

5   if: (1) the litigant exhausted all administrative remedies; (2) the

6   United States has failed to establish that its position in the

7   proceeding was substantially justified; (3) the litigant

8   substantially prevailed with respect to the amount in controversy

9   or with respect to the most significant issue or set of issues

10  presented; (4) the litigant did not unreasonably protract any

11  portion of the proceeding; (5) the litigant meets certain net worth

12  requirements; and (6) the litigant timely filed a fee application

13  that is adequately supported by billing records.   26 U.S.C. §

14  7430(b) and (c); <u>see</u> <u>also</u> <u>Yochum</u>, 89 F.3d at 670.[3]

15       When a prevailing party seeks both administrative and

16  litigation costs and fees, the court must consider separately

17  whether the United States' position at the administrative level was

18  justified and whether its position during litigation was justified.

19  <u>Pac. Fisheries, Inc. v. United States</u>, 484 F.3d 1103, 1109 (9th

20  Cir. 2007).

21

22  **IV.   DISCUSSION**

23       Plaintiff argues that he has met all of the requirements of

24  section 7430 and is therefore entitled to fees and costs incurred

25  _____

26  [3] <u>Yochum</u> states that the party seeking to recover fees had the
    burden of proving that the United States' position in the
27  proceeding was not substantially justified, but the statute has
    since been revised to provide that the United States bears the
28  burden of proof on this issue.   See <u>Pac. Fisheries, Inc. v. United</u>
    <u>States</u>, 484 F.3d 1103, 1107 (9th Cir. 2007).

**United States District Court**
For the Northern District of California

1 both at the administrative level and during the course of this

2 litigation.  Mot. at 1.  The United States argues that Plaintiff

3 fails to qualify as a "prevailing party" for numerous reasons.

4 First, as a new argument raised only in its Final Opposition, the

5 government argues that Plaintiff did not "substantially prevail" in

6 the action.  Final Opp'n at 6-7.  Second, the government contends

7 that Plaintiff cannot recover because he has not established that

8 he satisfied section 7430's net worth requirements.  Opp'n at 11-

9 12.   Third, the government argues that Plaintiff cannot recover

10 fees and costs incurred at the administrative level because the

11 United States never "took a position" for the purposes of section

12 7430 prior to this litigation.  Opp'n at 8-9.  Fourth, Defendant

13 argues that Plaintiff cannot recover fees and costs incurred during

14 the litigation stage of the dispute because the position of the

15 United States in the litigation was substantially justified.  Opp'n

16 at 9-11.

17      **A.**    <u>**Plaintiff Substantially Prevailed in This Action**</u>

18      To qualify as a prevailing party under section 7430, a party

19 must have substantially prevailed with respect to the amount in

20 controversy or with respect to the most significant issue or set of

21 issues presented.  26 U.S.C. § 7430(c)(4).  Plaintiff filed this

22 action seeking to recover a total of $612,197.  In its summary

23 judgment motion, the government conceded that Plaintiff was owed

24 $494,670, but argued that recovery of the remaining $117,527 was

25 barred by the statute of limitations.  The Court granted summary

26 judgment in favor of the government with regard to the $117,527 and

27 awarded Plaintiff the remaining $494,670.  Plaintiff thus recovered

28 eighty-one percent of the amount in controversy in this action and

**United States District Court**
For the Northern District of California

1 │ has substantially prevailed under section 7430.

2 │     The government argues that because it conceded early on in the

3 │ litigation that Plaintiff was owed the $494,670, the Court should

4 │ consider only the remaining $117,527 to be the amount in

5 │ controversy in this action.  The government provides no authority

6 │ for this argument, and the Court rejects it.  The entire $612,197

7 │ was in controversy when Plaintiff filed this suit.  The Court finds

8 │ that Plaintiff substantially prevailed by recovering $494,670 as a

9 │ result of this action.

10 │     **B.    <u>Net Worth Requirement</u>**

11 │     In order to qualify as a "prevailing party" under section

12 │ 7430, a litigant must meet certain net worth requirements set forth

13 │ in 28 U.S.C. § 2412(d)(2)(B).  <u>See</u> 26 U.S.C. § 7430(c)(4)(A)(ii).

14 │ The litigant must be either: (1) an individual whose net worth did

15 │ not exceed $2,000,000 at the time the action was filed; or (2) the

16 │ owner of a business the net worth of which did not exceed

17 │ $7,000,000 and which did not have more than five hundred employees

18 │ at the time the action was filed.  28 U.S.C. § 2412(d)(2)(B).  The

19 │ litigant seeking to recover fees must make an evidentiary showing

20 │ that its net worth did not exceed the statutory threshold.  <u>Al</u>

21 │ <u>Ghanim Combined Group Co. v. United States</u>, 67 Fed. Cl. 494, 496-97

22 │ (2005); <u>King v. United States</u>, No. H-90-1358, 1993 WL 379595, at *1

23 │ (S.D. Tex. June 18, 1993).

24 │     Because Plaintiff is the owner of a business, he meets the net

25 │ worth requirements if his business did not have more than five

26 │ hundred employees and was not worth more than $7,000,000 at the

27 │ time this action was filed.  Plaintiff initially submitted a

28 │ declaration stating that he satisfied these requirements.  ECF No.

**United States District Court**
For the Northern District of California

1    54-1 ("Second Reynoso Decl.") at ¶¶ 2-3.  The government argued

2    that this declaration was insufficient to prove Plaintiff's net

3    worth.[4]  Opp'n at 11-12.  At the April 15, 2011 hearing on the

4    Motion, the Court ordered the parties to depose Plaintiff regarding

5    his net worth.

6        The parties deposed Plaintiff on April 27, 2011.  ECF No. 72-1

7    ("Second Ham Decl.") ¶ 2.  Plaintiff filed the deposition

8    transcript, along with Plaintiff's detailed financial statements,

9    which demonstrate that Plaintiff's net worth, including business

10   assets, was approximately $3.3 million at the time this suit was

11   filed.  See Second Ham Decl. ¶¶ 2-3 Exs. A ("Reynoso Dep."), B

12   ("Dep. Exhibits").  Plaintiff testified during his deposition that

13   the financial documents produced represent the entirety of his

14   assets.  Reynoso Dep. at 73.  The Court finds that Plaintiff's

15   testimony and documentation conclusively demonstrate that he

16   satisfied the net worth requirements in section 7430 at the time of

17   filing suit.

18       **C.   Recovery of Administrative Fees and Costs**

19       In total, Plaintiff seeks to recover fees and costs incurred

20   from April 2009, when Plaintiff retained his current counsel,

21   through the conclusion of post-judgment proceedings.  This time

22   span encompasses Plaintiff's efforts to recover his refund both at

23   the administrative level and through this litigation.  Under

24   Pacific Fisheries, the Court must bifurcate its analysis and

25   consider separately whether Plaintiff is entitled to administrative

26   fees and costs and litigation fees and costs.  484 F.3d at 1109.

27   _____

28   [4] The government did not contest Plaintiff's averment that his
     business employs fewer than five hundred persons.

8

**United States District Court**
For the Northern District of California

1    Plaintiff seeks administrative fees and costs from April 2009

2  through the filing of this lawsuit on January 8, 2010.  Mot. at 1.

3  The government argues that Plaintiff cannot recover administrative

4  fees and costs because the government did not take a "position"

5  with respect to Plaintiff's case at the administrative level, which

6  precludes a finding that the government's administrative position

7  was not "substantially justified."  Opp'n at 8.

8    Section 7430(c)(7) defines the term "position of the United

9  States" with respect to administrative proceedings[5] as the position

10 taken "as of the earlier of: (i) the date of the receipt by the

11 taxpayer of the notice of decision of the [IRS] Office of Appeals,

12 or (ii) the date of the notice of deficiency."  The government

13 contends that it never took a position at the administrative level

14 as defined by the statute because Plaintiff never received a notice

15 of decision from the IRS Office of Appeals or a notice of

16 deficiency.  Opp'n at 9.  The government notes that section 7430 is

17 a partial waiver of the government's sovereign immunity and must

18 therefore be strictly construed in favor of the government.  See

19 Ardestani v. United States, 502 U.S. 129, 137 (1991).

20    The government relies on Florida Country Clubs, Inc. v.

21 Comm'r, 122 T.C. 73, 83 (2004), to support its contention that it

22 never took a position as defined by section 7430 prior to this

23 lawsuit.   In Florida Country Clubs, an IRS audit initially

24 ─────────────────
[5] Section 7430(c)(5) defines "administrative proceeding" as "any
25 procedure or other action before the Internal Revenue Service."
   Although the government states that "Plaintiff has not specified
26 any particular administrative proceeding which has resulted in his
   incurring costs," it notes that Plaintiff appears to be referring
27 to his various refund claims to the IRS prior to filing suit.
   Opp'n at 8.  The government does not argue that Plaintiff's pre-
28 litigation efforts to obtain his refund from the IRS do not qualify
   as an "administrative proceeding" under the statute.

**United States District Court**
For the Northern District of California

1 determined that deficiencies existed in plaintiffs' 1994 tax

2 payments, and the IRS proposed adjustments to plaintiffs' taxes

3 accordingly. Id. at 74. The plaintiffs protested the proposed

4 adjustments to the IRS Appeals Office. Id. The parties settled

5 the case before a formal notice of deficiency or Appeals Office

6 notice of decision was issued. Id. at 75. In the settlement, the

7 IRS conceded that it had erred and plaintiffs owed no additional

8 taxes. Id. at 82. The plaintiffs filed suit seeking

9 administrative fees and costs under section 7430. The court ruled

10 that the government had not taken a position as defined by section

11 7430(c)(4) because no notice of deficiency or notice of decision

12 from the IRS Appeals Office had been issued. Id. at 87.

13 Therefore, plaintiffs were not "prevailing parties" as defined by

14 the statute and could not recover fees and costs. Id.

15      Plaintiff argues that Florida Country Clubs is inapposite

16 because here it was impossible for Plaintiff to receive a

17 deficiency notice or a notice of decision from the IRS Office of

18 Appeals. Opp'n at 3. Plaintiff notes that in his case, no

19 deficiency existed; rather, he had paid more than he owed. Id.

20 Furthermore, because the IRS never responded to his refund claims,

21 he could not file an appeal with the IRS Office of Appeals. Id.

22 (citing Pohl v. United States, 29 Fed. Cl. 66, 70 (1993)) ("[I]f

23 the IRS takes no action on the claim, the taxpayer may file a

24 complaint six months after the date of the filing of the refund

25 claim; there is no provision for appeal within the IRS.").

26      Plaintiff further asserts that the government's argument has

27 already been considered and rejected under similar facts in

28 Grisanti v. United States, No. 3:05CV12-D-A, 2006 U.S. Dist. LEXIS

**United States District Court**
For the Northern District of California

1  94180 (N.D. Miss. Oct. 10, 2006). Reply at 3. In Grisanti, the

2  plaintiffs failed to timely file their 1998 tax returns or pay

3  taxes on those returns. Id. at *1. After negotiations with the

4  IRS, the plaintiffs and the IRS agreed to an installment repayment

5  plan. Id. Despite the fact that the plaintiffs made timely

6  payments in accordance with the repayment plan, the IRS seized

7  their tax refund for 2002. Id. at *2. The plaintiffs filed a

8  claim with the IRS in 2003 seeking the return of the seized refund

9  but were denied. Id. They filed suit for damages in January 2005,

10  and the IRS issued their refund three weeks later. Id. The

11  plaintiffs sought attorney's fees and costs under section 7430.

12  Id. at *4. The government argued, as it does here, that the

13  plaintiffs could not recover fees and costs under section 7430

14  because the IRS Office of Appeals never issued a notice of

15  decision, the plaintiffs were never issued a notice of deficiency,

16  and therefore the government never "took a position" as defined by

17  the statute. Id. The court rejected this argument, stating that

18  "the IRS cannot hide behind the law by simply failing to act or

19  take a position." Id. at *9. The court explained:

20              The Court notes that it was not until the
              Plaintiffs filed this action in this Court that
21              the Government issued their refund. The IRS sat
              on Grisanti's refund for the entire calendar
22              years of 2003 and 2004. The Plaintiffs made
              repeated demands and requests for their refund
23              and were denied. The Government tries to hide
              behind the fact that it never formally denied the
24              Plaintiffs their refund. . . . [T]he IRS
              attempted to insulate itself from any imposition
25              of attorneys' fees by not issuing a formal
              denial. . . . [T]he IRS cannot protect itself by
26              inaction or failure to issue an official
              administrative ruling.

27

28  Id. at *8.

11

**United States District Court**
For the Northern District of California

1    Plaintiff argues this Court should follow <u>Grisanti</u> and not

2  allow the government to protect itself from the imposition of

3  attorney's fees by simply not responding to Plaintiff's numerous

4  refund claims prior to filing suit.  Reply at 3.  The Court agrees.

5  The IRS's failure to respond to Plaintiff's repeated requests for

6  his refund and for the return of the unapplied portion of the cash

7  bond was tantamount to a denial of those requests.  The government

8  cannot insulate itself from paying attorney's fees by simply

9  ignoring a refund request instead of issuing a formal denial.  The

10  Court thus rejects the government's contention that it did not take

11  a "position" prior to litigation in this case.  Plaintiff is

12  therefore entitled to costs and fees incurred at the administrative

13  level.

14      **D.    <u>Recovery of Litigation Fees and Costs</u>**

15    The government argues that the position of the United States

16  in the instant litigation was substantially justified.

17  Alternatively, the government argues that if the Court finds some

18  positions taken by the government were justified and others were

19  not, then Plaintiff should only be entitled to recover fees and

20  costs incurred litigating against the particular government

21  positions that the Court finds unjustified.  Final Opp'n at 8-9.

22    The government bears the burden of establishing that its

23  position was substantially justified under section 7430.  <u>Pac.</u>

24  <u>Fisheries</u>, 484 F.3d at 1107.  "The position of the United States is

25  substantially justified if it is justified to a degree that

26  satisfies a reasonable person.  That is, it must have a reasonable

27  basis in both law and fact."  <u>Id.</u> (internal citations omitted).

28  "Generally, the position of the United States in the judicial

**United States District Court**
For the Northern District of California

1  proceeding is established initially by the [g]overnment's answer to

2  the petition."   Huffman v. Comm'r, 978 F.2d 1139, 1148 (9th Cir.

3  1992).   Nevertheless, "[t]he Congressional intent behind section

4  7430 is not served by looking only to the answer to determine

5  whether the government's position in the judicial proceeding was

6  'substantially justified.' The better approach is to examine the

7  parties' conduct within each stage of the case."   Id.

8       The government filed its Answer on April 20, 2010.   ECF No. 6

9  ("Answer").   In its Answer, the government denied Plaintiff's

10 allegations that he was due a refund for tax overpayments "for lack

11 of knowledge or information sufficient to form a belief as to the

12 truth of the allegations."   Answer ¶ 10.   The government also

13 denied that Plaintiff was entitled to recover the unapplied portion

14 of the cash bond.   Id. ¶ 23.   The government concluded by

15 requesting that "Plaintiff take[] nothing by his Complaint."   Id.

16 at 4.

17      Plaintiff argues that the government's Answer established an

18 unjustified position that Plaintiff was due no refund, and that the

19 government did not relent from this position until due diligence

20 forced it to do so in its motion for summary judgment eleven months

21 later.   Mot. at 6-7; Reply at 5-6.   Plaintiff contends that the

22 government should have diligently investigated Plaintiff's claims

23 before filing its Answer.   Mot. at 7.   Had it done so, it would

24 have quickly determined that Plaintiff was due at least a portion

25 of his overpayments and the entirety of the unapplied portion of

26 the cash bond.   Id.   Instead, the government took the position that

27 Plaintiff was due nothing, a position that the government has been

28 unable to support with evidence.   Id.

13

**United States District Court**
For the Northern District of California

1    The government admits that "as [P]laintiff points out, the

2  government did not initially concede any amount was due as a

3  refund."  Opp'n at 10.  The government argues that this position

4  was reasonable because the IRS was in the process of auditing

5  Plaintiff's 1999 tax returns at the time, and the government wished

6  to review Plaintiff's tax returns and await the results of the

7  audit before conceding that Plaintiff was due any refund.[6]  Id.

8    The government further contends that it changed its original

9  position almost immediately, and instead took the position that

10  Plaintiff was due a refund for a portion of his overpayment but

11  that a portion was time barred.  Opp'n at 10-11.  The government

12  asserts that it voiced this position to Plaintiff's counsel during

13  settlement negotiations as early as April 2010, the same month in

14  which the government filed its Answer.  Opp'n at 4; Stamm Decl. ¶

15  4.[7]  The government argues that its new position was clearly

16  justified because it was precisely the decision reached by this

17  Court in its December 21, 2010 Order granting summary judgment in

18  favor of the government.  See ECF No. 26.

19    In rebuttal, Plaintiff contends that even if the government's

20  position is construed to be that Plaintiff was due a refund for

21  part but not all of his 1999 and 2000 overpayments, the

22  government's continued refusal to remit the unapplied portion of

23  the cash bond was unjustified as a matter of law.  Plaintiff notes

24  that section 7430 provides that the position of the United States

25

---

26  [6] Plaintiff notes that the results of the 1999 audit would have had
no bearing on Plaintiff's claims for the refund from his 2000
27  overpayment or the unapplied portion of the cash bond.  Reply at 4.

28  [7] Blake Stamm ("Stamm"), attorney for the United States, filed a
declaration in support of the Opposition.  ECF No. 52-1.

14

1  "shall be presumed not to be substantially justified if the [IRS]

2  did not follow its applicable published guidance."  26 U.S.C. §

3  7430(c)(4)(B)(ii).  Plaintiff contends that the refusal of the IRS

4  to return the unapplied portion of the bond violated IRS

5  regulations and federal law.

6       The Court agrees with Plaintiff.  Section 6.01 of Revenue

7  Procedure 2005-18 provides that "[a] taxpayer may request the

8  return of all or part of a deposit at any time before the service

9  has used the deposit for payment of a tax."  The Internal Revenue

10  Code similarly provides that "[e]xcept in a case where the

11  Secretary determines that collection of tax is in jeopardy, the

12  Secretary shall return to the taxpayer any amount of [a] deposit

13  (to the extent not used for payment of tax) which the taxpayer

14  requests in writing."  26 U.S.C. § 6603(c).  Here, the cash bond

15  cannot be characterized as anything other than a deposit, as it was

16  seized by the government as security against unascertained tax

17  liabilities.  See Rosenman v. United States, 323 U.S. 658, 660-63

18  (1945) (payment tendered "under protest and duress" to satisfy an

19  unascertained tax liability was properly characterized as "a

20  deposit made in the nature of a cash bond").  Plaintiff made three

21  written requests for the return of the unapplied portion of the

22  cash bond.  The IRS violated its own guidelines by refusing

23  Plaintiff's requests.  The government's position with regard to the

24  cash bond, therefore, was not substantially justified.

25       The only substantially justified position taken by the

26  government during this litigation was its assertion that

27  Plaintiff's recovery of $117,527 was time-barred.  The government

28  prevailed on this issue at summary judgment.  By contrast, the

15

**United States District Court**
For the Northern District of California

1   Court denied Plaintiff's motion for summary judgment.  Plaintiff is

2   therefore not entitled to recover fees and costs incurred in

3   preparing his motion for summary judgment or in preparing his

4   opposition to the government's motion for summary judgment.

5   Hensley v. Eckerhart, 461 U.S. 424, 440 (1983) ("Where the

6   plaintiff has failed to prevail on a claim that is distinct in all

7   respects from his successful claims, the hours spent on the

8   unsuccessful claim should be excluded in considering the amount of

9   a reasonable fee. . . . [W]here the plaintiff achieved only limited

10  success, the district court should award only that amount of fees

11  that is reasonable in relation to the results obtained.")

12      The government contends that Plaintiff should also be denied

13  fees and costs incurred at any time after the government conceded

14  that a partial refund was due.[8]  The Court disagrees.  The

15  government protracted this litigation even after the Court's

16  judgment by failing to timely pay the agreed amount, prompting

17  Plaintiff to file a Motion to Enforce the Judgment.  ECF No. 44.

18  The government also e-filed Plaintiff's unredacted tax returns,

19  which disclosed his social security number, which forced Plaintiff

20  to incur expenses corresponding with the government to remedy the

21  improper disclosure.  See ECF Nos. 53, 55.  Plaintiff is entitled

22  to the fees and costs incurred in pursuing these matters.

23      Lastly, Plaintiff notes that the IRS recently sent Plaintiff a

24  letter stating that a failure-to-file penalty of $6,979 is due for

25  the year 2000.  Final Reply at 8.  Plaintiff argues that this is

26

27  [8] The government states that it conceded that a partial refund was
    due in August 2010, but no court filings indicate this.  Final
28  Opp'n at 9.  The first filing in which the government conceded was
    its motion for summary judgment filed in November 2010.

16

**United States District Court**
For the Northern District of California

1  incorrect and that no penalty is due.  He states that he

2  anticipates incurring fees to resolve this issue and should be

3  entitled to recover those fees as well.  The Court disagrees.

4  Plaintiff is only entitled to recover fees and costs directly

5  related to this action.  The ambit of this action does not

6  encompass each and every dispute that has arisen or may arise

7  concerning Plaintiff's 1999, 2000, and 2001 tax returns.

8

9  **V.     CONCLUSION**

10      For the foregoing reasons, the Court GRANTS IN PART and DENIES

11  IN PART Plaintiff Jose Reynoso's Motion for Attorney's Fees and

12  Costs.  Plaintiff is entitled to attorney's fees and costs for: (1)

13  the administrative phase of this dispute; (2) the litigation phase

14  of this dispute, with the exception of time spent preparing his

15  motion for summary judgment and opposition to the government's

16  motion for summary judgment; and (3) time spent post-judgment due

17  to the government's failure to timely remit payment and accidental

18  posting of Plaintiff's unredacted tax return.

19      Within thirty (30) days of this Order, Plaintiff shall submit

20  appropriate documentation of the fees and costs incurred in

21  relation to the activities enumerated above.

22

23      IT IS SO ORDERED.

24

25      Dated:  August 9, 2011

26                                                  UNITED STATES DISTRICT JUDGE

27

28

17